UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SHANE ROBERT ERIC MYRES,                                    Case No. 6:13-cv-262-AC

                                    Plaintiff,                     FINDINGS AND
                                                                   RECOMMENDATION

                    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                                    Defendant.
_____

ACOSTA, Magistrate Judge:

*Introduction*

        Plaintiff Shane Robert Myres ("Myres") prevailed in his challenge to the decision of the

Commissioner of Social Security ("Commissioner") regarding his disability claim.  He now moves

for an award of attorney fees in the amount of $6,619.12 under the Equal Access to Justice Act (28

U.S.C. § 2412)(the "Act").  The Commissioner opposes Myres's request for fees on the ground her

position was substantially justified. The court finds the Commissioner's position, both at the administrative level and before this court, was substantially justified. Accordingly, the court recommends Myres's motion for attorney fees under the Act be denied.

*Background*

Myres filed his application for Disability Insurance Benefits and Supplemental Security Income Benefits ("Benefits") on June 9, 2009, alleging an onset date of November 15, 2008. His application was denied initially and on reconsideration. On January 6, 2012, an Administrative Law Judge ("ALJ") issued an opinion in which he found Myres not disabled and, therefore, not entitled to Benefits. That decision became the final decision of the Commissioner on December 26, 2012, when the Appeals Council denied Myres's request for review.

Myres sought review of the Commissioner's decision by filing a complaint in this court on February 14, 2013. Myres alleged the ALJ erred in four respects: (1) failing to give clear and convincing reasons for rejecting Myres's testimony; (2) rejecting the opinion of Christopher Wallis, PAC, the treating physical assistant; (3) failing to meet the burden of proving Myres retains the ability to perform "other work" in the national economy; and (4) failing to include Myres's mental impairments at steps two and four of the sequential analysis. On July 2, 2014, this court issued Findings and Recommendations rejecting Myres's arguments and recommending affirmation of the Commissioner's decision denying Myres's applications (the "F&R"). On September 24, 2014, District Judge Michael Simon issued an Opinion and Order in which he declined to adopt those portions of the F&R relating to the ALJ's assessment of Myres's credibility and Myres's ability to perform work in the national economy, and remanded the matter for immediate award of Benefits (the "Opinion"). The Commissioner moved to alter or amend the Opinion on October 22, 2014,

arguing Judge Simon erred in reversing this court's recommendation on the ALJ's credibility finding with regard to Myres, failing to consider whether such error was harmless or prejudicial, and remanding for an award of Benefits. Judge Simon denied this motion in an Opinion and Order dated December 16, 2014. Myres filed the instant motion for attorney's fees under the Act on March 13, 2015.[1]

*Legal Standard*

The Act provides attorney fees shall be awarded to the prevailing party unless the government can show its position is substantially justified. 28 U.S.C. § 2412(d)(1)(A). A substantially justified position must have a "reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988). This inquiry consists of two parts: "first, whether the government was substantially justified in taking its original actions; and, second, whether the government was substantially justified in defending the validity of the action in court." *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988); *see also* 28 U.S.C. § 2412(d)(2)(D). The reasonableness standard is met if the government's position is "justified in substance or in the main" or "to a degree that could satisfy a reasonable person." *Corbin v. Apfel*, 149 F.3d 1051, 1052 (9th Cir. 1998). The United States Supreme Court has explained that a "position can be justified even though it is not correct" and need not be "justified to a high degree." *Pierce*, 487 U.S. at 565, 566 n.2. The standard is lower than the "substantial evidence" standard and is met if there is a "genuine dispute." *Id*. at 565.

---

[1] Myres filed a motion for attorney fees under 42 U.S.C. § 406(b) on March 23, 2015. Myres's request for attorney fees pursuant to § 406(b) will be resolved separately in a decision to follow. An award under the Act effectively increases the amount of past-due benefits the claimant will receive. *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). A fee award under both the Act and § 406(b) is permitted, but the claimant's attorney must refund the smaller of the two fees. *Id*. Once the present decision has been ruled upon by an Article III Judge, the court will issue its ruling on Myres's request for attorney's fees under § 406(b).

The government has the burden of establishing substantial justification, as a whole. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001).  This requires the district court to focus on whether the government's position on the particular issue on which the claimant earned remand was substantially justified, not on whether the government's ultimate disability determination was substantially justified. *Hardisty v. Astrue*, 592 F.3d 1072, 1078 (9th Cir. 2010); *see also Flores v. Shalala*, 49 F.3d 562, 569 (9th Cir. 1995)(claimant was entitled to attorney's fees unless Commissioner could show "her position with respect to the issue on which the court based its remand was "substantially justified'"").   "The government's failure to prevail does not raise a presumption that its position was not substantially justified."  *Kali*, 854 F.2d at 334.

## Discussion

It is undisputed Myres is a prevailing party in this action.  *Gutierrez*, 274 F.3d at 1257 ("An applicant for disability benefits becomes a prevailing party for the purposes of the [Act] if the denial of her benefits is reversed and remanded regardless of whether disability benefits ultimately are awarded.") Therefore, the question before the court is whether the Commissioner was substantially justified in its position on Myres's credibility.

In reviewing claims for attorney fees under the Act, the court must remain cognizant of the different standards applied to the substantive review of an agency decision and a subsequent request for fees.  The substantial justification standard applied to the latter is a separate and lower standard than that governing review of the merit of disability determinations.  *Pierce*, 487 U.S. at 568-69.  Accordingly, in rare but appropriate cases, courts have held the Commissioner's position substantially justified even if substantial evidence in the record does not support the agency decision. *Id*. at 566 n.2; *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).

The phrase "substantial evidence" "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce*, 487 U.S. at 552 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantial justification" is based on a lower evidentiary standard satisfied if there is a "genuine dispute" or if "reasonable people could differ as to the appropriateness of the contested action." *Pierce*, 487 U.S. at 552 (citations and brackets omitted.) Therefore, while a finding that an agency's decision was not supported by substantial evidence is a strong indication the government's position was not substantially justified, it is not determinative. *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005). In "decidedly unusual" cases, substantial justification may exist under the Act "even though an agency's decision was reversed as lacking in reasonable, substantial, and probative evidence in the record." *Id*.

Where an ALJ fails to address or ignores evidence, fails to make necessary inquiries of an unrepresented claimant, or fails to provide support necessary for rejecting evidence, the Commissioner's decision is not substantially justified. *See Corbin v. Apfel*, 149 F.3d 1051, 1053 (9th Cir. 1998); *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995); *Sampson v. Chater*, 103 F.3d 918, 921-22 (9th Cir. 1996). However, the Ninth Circuit found the Commissioner's erroneous characterization of the claimant's testimony substantially justified, both in law and fact, in light of the ALJ's obligation to assess the claimant's testimony and evidence from two sources which cast reasonable doubt on claimant's testimony. *Lewis*, 281 F.3d at 1084-86. Similarly, the court found the Commissioner's finding, and argument, that a particular doctor did not qualify as a treating physician to be "nonfrivolous" based on a vague regulatory standard based and the severity and complexity of the claimant's alleged mental limitations. *Le v. Astrue*, 529 F.3d 1200, 1201 (9th Cir.

2008).

The record contained objective medical evidence which could reasonably be expected to produce some degree of the physical symptoms described by Myres. Accordingly, the ALJ was required to provide specific, clear and convincing reasons for rejecting Myres's testimony about the severity of these symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ gave four reasons for discrediting Myres's testimony regarding the intensity, persistence, and limiting effects of his Crohn's disease. First, the ALJ noted Myres's systems were historically controlled with medical marijuana, Myres's testimony regarding marijuana use was inconsistent, and Myres was able to obtain medical marijuana when he could not afford prescribed medications. (Admin. R. at 17.) Second, the ALJ described Myres's fluctuations in body weight as inconsistent with the severity of the alleged symptoms. (Admin. R. at 17.) Third, the ALJ found Myres's activities of daily living inconsistent with the degree of limitation alleged. (Admin. R. at 17.) Finally, the ALJ stated Myres's testimony regarding the extent of his limitations was not supported, but rather contradicted, by objective medical evidence. (Admin. R. at 17.)

In the F&R, this court found Myres's testimony inconsistent on use of marijuana, ranging from twice a week to daily; evidence Myres's symptoms were controlled with marijuana; the absence of weight loss despite testimony of regular vomiting and diarrhea; objective medical assessments revealing only mild to moderate disease; and Myres's participation in his children's sports activities as a coach or spectator, provided clear and convincing reasons for rejecting Myres's subjective symptom statements. Judge Simon disagreed with this conclusion and remanded this action for an award of Benefits. *Myres v. Colvin*, No. 6:13-cv-00262-AC, 2014 WL 4792592, at *4, *6. (D. Or. Sept. 24, 2014).

Judge Simon rejected the ALJ's reliance on the inconsistency between Myres's ability to maintain his medical marijuana supply and his lack of financial resources to purchase medications prescribed by his physicians, noting the absence of evidence with regard to the relative cost of the prescribed medication and medical marijuana. *Myres,* 2014 WL 4792592, at *3. He considered the fluctuations in Myres's weight to be consistent with the alleged severity of the reported symptoms. *Id.* Judge Simon noted that while Myres testified he engaged in various activities, such as coaching his children, shopping and assisting with household chores, his participation in these activities had decreased since the onset of his illness and was limited to "when he can and to the best that he can." *Id.* at *3 -*4; (citing Admin. R. at 165.) Finally, Judge Simon found, in light of his conclusion "the other reasons given by the ALJ are not clear and convincing, the lack of objective medical evidence is an insufficient basis on which to discredit Mr. Myres's testimony." *Id.* at *4. Judge Simon then credited Myres's testimony as true and found him disabled based on testimony from the vocational expert that Myres's need to use the restroom as much as eight to twelves time a day on "bad days" would likely not be tolerated by an employer. *Id.* at *5.

In summary, Judge Simon rejected the ALJ's credibility analysis finding the ALJ did not properly consider Myres's financial inability to purchase prescribed medications, the fluctuations in Myres's weight, and Myres's ability to engage in daily activities.[2] Accordingly, the court's

---

[2]Judge Simon did not reject the ALJ's finding that Myres's description of his limitations was not supported by objective medical evidence. He merely stated this reason alone was not sufficient to discredit a claimant's testimony and did not address the inconsistencies between Myres's testimony and the objective medical evidence. *Myres*, 2014 WL 4792592, at *4 (citing *Rollins v. Massanari*, 261 F.3d. 853, 857 (9th Cir. 2001)(noting opinions by medical sources finding no exertional limitations cannot be the sole basis of an adverse credibility finding, but is a relevant factor to consider.)) Therefore, the Commissioner's position on this fourth issue was affirmed by Judge Simon and must be considered substantially justified.

consideration of whether the Commissioner was substantially justified in finding Myres not entirely credible is limited to these three issues.

It is well-settled law that "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)(quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).  A court's inquiry is limited to whether the record, as a whole, provides evidence which reasonably supports the ALJ's conclusions. *Sample*, 694 F.2d at 642.  The ALJ is "entitled to draw inferences logically flowing from the evidence" and to interpret evidence "susceptible to more than one rational interpretation." *Id*.

Once a claimant produces medical evidence of an underlying impairment reasonably expected to produce some degree of the symptoms complained of, in the absence of affirmative evidence showing the claimant is malingering, the Commissioner must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of his symptoms. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  General findings will not satisfy the ALJ's burden; rather, the ALJ must identify what testimony is not credible and the evidence relied upon for that finding. *Id*.  These findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir. 1995).

In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness; inconsistencies either in his testimony or between his testimony and his conduct; his daily activities; his work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.

1996).  An ALJ may properly discredit a claimant's allegations of disability if [the] claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" or if there is evidence of "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  In addition, the ALJ may use ordinary techniques of credibility evaluation, such as prior inconsistent statements concerning the symptoms, or other actions which reflect on the claimant's credibility.  *Smolen*, 80 F.3d at 1284; SSR 96-7p.

The ALJ found Myres not entirely credible based, in part, on testimony related to his marijuana use.  The ALJ based this finding on Myres's inconsistent statements regarding his drug use and his ability to regularly procure marijuana while not being able to afford drugs prescribed to him by his treating physicians.  In the absence of evidence in the record on the relative cost of marijuana and the prescription drugs, Judge Simon reasoned this justification was not supported by the record; he did not, however, opine one way or the other on the inconsistencies in Myres's statements regarding his marijuana use.  At the hearing, Myres represented he used marijuana twice a week but when questioned if that meant he was sick only a couple of times a week, he testified that in the last six weeks he had used it every day for a couple of weeks.  (Admin. R. at 36-38.) Inconsistencies in testimony is a recognized ground for discrediting a claimant's testimony. Additionally, Myres was barred from marijuana use as a condition of probation in May 2010, but represented at the hearing he continued to use it regularly.  (Admin. R. at 36-37, 300.)  This knowing violation of his parole conditions is an action which reflects on Myres's credibility and provides acceptable support for the ALJ's credibility evaluation.

The ALJ considered evidence that Myres rarely lost weight, and occasionally gained weight,

to be inconsistent with Myres's testimony regarding his constant nausea and diarrhea, and inability to maintain proper nutrition. Judge Simon noted the record showed Myres's weight fluctuated from a low of 157 pounds in November 2007 to a high of 182 pounds in September 2010. *Myres*, 2014 WL 4792592, at *3. Judge Simon found this evidence consistent with the waxing and waning of Myres's symptoms over the years. *Id.* This finding, however, does not negate the presence of evidence in the record which provided a bais – and justification – for the ALJ's conclusion.

For example, while the record reveals Myres's weight did "fluctuate" from November 2007 to September 2010, it also reveals that, at least during the primarily relevant period, Myres generally gained weight. Myres was first diagnosed with Crohn's in the summer of 2007. (Admin. R. at 253.) In September 2007, Myres reported a ten year history of abdominal pain, being awakened by vomiting five days a week, and four crampy diarrhea stools a day, but that he had not lost any weight. (Admin. R. at 220.) At this time, Myres weighed 155 pounds. (Admin. R. at 221.) Over the next six months, Myres gained seventeen pounds, weighing 157 pounds in November 2007, and 172 pounds in April 2008. (Admin. R. at 231, 236.)

The next medical record, dated February 5, 2009, notes Myres's continued complaints of nightly vomiting, solid bowel movements alternating with diarrhea, and abdominal pain. (Admin. R. at 329.) While the report indicated Myres's weight and appetite were "stable", Myres's weight had dropped to 162 pounds. (Admin. R. at 329-30.) This was the last significant weight loss. Over the next approximately three years, Myres generally gained weight. Myres weighed 167 pounds in May 2009; 170 pounds in July 2009; 165 pounds in August 2009; 168 pounds in December 2009 and January 2010; 170 pounds in April 2010; 176 pounds in May 2010; 182 pounds in September 2010; 180 pounds in July 2011; 183 pounds in September 2011; and 179 pounds in November 2011.

(Admin. R. at 254, 297, 301, 305, 308, 323, 325, 327, 339, 344, 349.)

At the hearing before the ALJ on November 4, 2011, Myres testified he currently weighed 180 pounds, which is supported by the medical records, but he also represented he had weighed as much as 190 pounds and as little as 160 pounds that year, which is clearly not supported by the record. (Admin. R. at 31.) In fact, Myres's weight stayed virtually constant, between 179 pounds and 182 pounds, during that year.

From the time Myres was diagnosed with Crohn's disease to the date of the hearing, Myres's weight had increased from 155 pounds to 179 pounds. While Myres did lose weight occasionally during this period, his weight gain of twenty-five pounds, his maintaining his weight in the higher range during the relevant period, and the relatively few and minor episodes of weight loss support the ALJ's finding that Myres "rarely lost weight and occasionally gained weight." (Admin. R. at 17.) The ALJ reasonably considered this weight gain as inconsistent with Myres's reports of regular nausea, vomiting, diarrhea, and inability to maintain proper nutrition.

Finally, the ALJ discredited Myres's testimony regarding the frequency and his severity of his symptoms, finding them inconsistent with his reported daily activities, such as attending and even coaching his children's sports activities. Judge Simon disagreed, relying solely on Myres's statements in the function report completed by Myres on July 29, 2009. *Myres*, 2014 WL 4792592, at *4. Again, there is other evidence in the record which supports the ALJ's analysis, even if his ultimate conclusion was determined to not be supported by substantial evidence.

Myres concedes his physical limitations are related solely to his Crohn's disease which, he argues, prevents him from sustaining "competitive employment because of the chronic nature of his symptoms of need to use the bathroom, abdominal pain, vomiting with a frequency that it would

interrupt his ability to be competitively employed." (Admin. R. at 30.) In other words, Myres would be "basically, an unreliable employee." (Admin. R. at 30.) Therefore, he is not limited in his physical ability to engage in daily activities, but his ability to be, and remain, present at an activity. The record is ambiguous on the issue of how often, and how long, Myres is able to engage in regular activities.

At the hearing, Myres's testified he volunteers quite often at his children's school but had not yet volunteered at their new school after he was forced, by the loss of his house, to move his family in with his mother. (Admin. R. at 33-34.) He also testified he tries to volunteer any time his children participated in a sport. (Admin. R. at 34.) He limits his trips away from the house or a readily available bathroom to those  good days where he has to use a bathroom a few times only. (Admin. R. at 44.) His wife reported on good days, or when he is feeling well, he cooks meals, helps with household chores, goes outside, drives, shops, interacts with family and others – it "just all depends on his health that day." (Admin. R. at 155-157.) She stated he does chores a "couple times a week," "tr[ie]s to never miss kids sports games," and "goes places as often as he can." (Admin. R. at 155, 157.) Myres reported that he starts every morning with vomiting and/or diarrhea, but once he is able to suppress the symptoms with medication, he can handle everything the rest of the day, as long as he stays close to a restroom. (Admin. R. at 161.) He states he gets around outside "as often as my body allows me to" or "as often as I can." (Admin. R. at 164, 165.) He is able to shop for up to two hours, depending on how he feels and if a bathroom is close by. (Admin. R. at 164.) He indicated he watches and coaches his kids sporting activities when he can but then represented he can no longer coach because he is often sick and misses games. (Admin. R. at 165.) Later, Myres noted his daily activities had not changed – "I still can only do what I can and when I can even do

Page 12 - FINDINGS AND RECOMMENDATION                          *{SIB}*

them." (Admin. R. at 201.) On August 27, 2009, Myres reported to DeWayde C. Perry, M.D., he "shares in the cooking and cleaning responsibilities", and "performs yardwork including mowing the grass with a push mover." (Admin. R. at 253.)

The record reveals Myres is limited to some degree by his Crohn's disease. He is unable, on bad days, to be away from a bathroom for any period of time. On his good days, he is able to engage in virtually all physical activities. The problem is the record is ambiguous on how may good days Myres has. The use of the general terms "when he can" or "as often as he can" does not provide a clear picture of the degree to which Myres's symptoms prevent him from engaging in daily activities. The ALJ interpreted the evidence, which is susceptible to more than one reasonable interpretation, to establish Myres was capable of engaging in daily activities fairly regularly, which exceeded the degree of limitation alleged. He was entitled to do just that.

The record as whole reveals a genuine dispute on the issue of Myres's credibility. The ALJ evaluated the evidence reasonably and drew inferences logically flowing from the record. That Judge Simon found the evidence ultimately not sufficient to rise to a clear and convincing level does not automatically equate to a lack of substantial justification. The court thus finds the Commissioner was substantially justified in denying Myres's claim for Benefits and for defending that decision in this court. Accordingly, Myres is not entitled to an award of attorney's fees under the Act.

*Conclusion*

Myres's motion (#31) for fees under the Act should be DENIED.

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **June 25, 2015**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 8th day of June, 2014.


_____
        /s/ John V. Acosta
        JOHN V. ACOSTA
    United States Magistrate Judge